# STATE OF FLORIDA v HARRINGTON
## Case No. 83-641-CF-A31-HDH
Twentieth Judicial Circuit, Collier County

November 10, 1983

### APPEARANCES OF COUNSEL

**Jim Smith,** Attorney General, and **Michael J. Kotler,** Assistant Attorney General, for plaintiff.

**Jerry Hill,** Public Defender, and **Michael E. Raiden,** Assistant Public Defender, for defendant.

### OPINION OF THE COURT

HUGH D. HAYES, Circuit Judge.

*STATEMENT OF AGGRAVATING REASONS FOR DEPARTING FROM THE SENTENCING GUIDELINES OF RULE 3.701 FLORIDA RULES OF CRIMINAL PROCEDURE*

The above-named Defendant did plead No Contest to a charge of violating Florida Statute 782.07 (Manslaughter), wherein he admitted

1

murdering one Laurena Dawkins, his common-law wife, who died on 13 July 1983, as a result of beating received at the hands of the Defendant.

The sworn statements of the eye witnesses to the crime, as well as the statement of the Defendant himself, reflect that the Defendant and the decedent began a verbal argument in the late afternoon hours of 21 June 1983. At approximately 7:45 P.M., the decedent reported to the Immokalee Substation of the Collier County Sheriff's Department that the Defendant had punched her in the mouth causing injury, and the Collier County Sheriff's Department responded and separated the two individuals and made each go his/her own way.

It appears from the evidence that the decedent and Defendant were companions to one Johnny Lee Anderson and his girlfriend, only known at this point as Dessie. It also appears that after being separated by the Collier County Sheriff's Department, the Defendant took the car and went back after the decedent and stopped her at the Eastern Service Station in Immokalee. There, he continued the argument immediately with the decedent and began to punch her in the face with his fist and apparently smashing her head up against the truck, only stopping after Mr. Anderson attempted to physically prevent the Defendant from further injuring the decedent. This was to no avail. Even when several bystanders attempted to determine what was happening and to try to talk the Defendant into ceasing from this destruction, the Defendant pulled his machete and threatened to take care of anybody else who got in his way, and even told Mr. Anderson that if he did not stay out of the Defendant's "business", that "I'll fuck you up".

It is important to point out that the Defendant at no time ever showed any remorse for the actions he had taken, he consistently tried to hide the fact of what he had done, he consistently demonstrated a belligerent and criminal action toward anyone who interfered with his goal, to-wit: the severe beating and death of the decedent, all of which actions occurred during a five-to-six-hour period on the 21st day of June, 1983.

Even though the record does reflect that the Defendant did consume a minor amount of alcoholic beverages, it is also the Court's clear impression that over the period of hours that transpired during 21 June 1983, the Defendant reached a definite state of mind in which it was his intent to beat this woman into submission and near death, unfortunately, actually accomplishing what his actions demonstrated his intent to be.

2

The Coroner's report in this case does demonstrate that the decedent suffered as follows:

"This 44-year old woman received at least ten (10) distinct blunt injuries to her head, at lease one (1) of them severe enough to cause a cerebral concussion, unconsciousness and subdural hemorrhage." . . . . . "The intracerebellar hemorrhage, as well as the optechial conjunctival hemorrhages of the eyes, in conjunction with non-specific degenerative brain damage are suggestive of temporary obstruction of neck veins."

Thus, it would appear that the Decedent brutally beat as well as strangled the decedent into a state of unconsciousness and coma, which eventually led to her demise.

The Court has taken the position that even though the Defendant pled to the Manslaughter charge in an agreement that the State would drop all of the other pending charges, it is important for the Court to still enforce those responsibilities and sanctions that the Court feels are to be imposed by society on this particular Defendant, necessitating a non-compliance with the Sentencing Guidelines. The Court's concern is that under the Sentencing Guidelines the Defendant would receive a sentence of five (5) to seven (7) years, and the Court has no objection to the Defendant actually serving a full seven-(7)-year sentence. However, even though no one would ever seriously worry in the public sector as to what rights or concerns the decedent might have, especially since she was a 44-year-old migrant, black, fruit-crop picker, the Court feels compelled to maintain that vigilance expected and demanded of society at large, even though she is now deceased.

THEREFORE, it is the Court's desire and intent that based upon the amount of time involved in which the ongoing dispute occurred, the multiple injuries received by the decedent, the lack of remorse of the Defendant, and his actions toward all innocent bystanders, the Court can only conclude that a seven-(7)-year "guidelines" sentence, in which the Court has no control over the amount of reduction in sentence that the Defendant would receive based upon good time or gain time, it is the Court's intention to insure that the Defendant actually serve a period of time in the State Prison System that is commensurate with the actions he took, as well as serving a minimum full seven-(7)-year sentence without any benefit of gain time or parole.

The Defendant came up before the Court for sentencing on 19 October 1983 and was advised of the Court's rejection of the plea of No Contest after receiving the Pre-Sentence Investigation with the recommended sentence. The Defendant, however, has determined to

**3**

keep his plea of No Contest on the record and to be sentenced as the Court sees fit.

The Defendant freely and voluntarily entered this plea knowing that the Court could sentence him up to fifteen (15) years in the Florida State Prison System.

THEREFORE, it is the sentence of this Court that the Defendant be adjudicated Guilty of violating Florida Statute 782.07, as charged in the Information found in Case Number 83-641, and that he be sentenced to a period of imprisonment of Fifteen (15) Years in the Florida State Prison.

DONE AND ORDERED this 10th day of November, 1983, in Open Court, Naples, Collier County, Florida.

Editor's Note: The trial court's decision was appealed to the Second District Court of Appeal (Case No. 83-2454). In the opinion filed September 12, 1984, the Second District Court of Appeal, the trial Court was affirmed and the court held that the trial judge's statement provided clear and convincing reasons for the departure from the sentencing guidelines.